[Cite as *State v. Geldrich*, 2016-Ohio-3400.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2015-11-103 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>6/13/2016 |
| - vs - | : | |
| | : | |
| MICHAEL ALBERT GELDRICH, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 13CR29717

David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Fowler, Stueve & Planas, Jeffrey W. Stueve, 301 East Silver Street, Lebanon, Ohio 45036, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Michael Albert Geldrich, appeals from the decision of the Warren County Court of Common Pleas ordering him to pay $2,383.98 in restitution upon remand from this court directing the trial court to hold an evidentiary hearing on the matter. For the reasons outlined below, we affirm.

{¶ 2} On March 8, 2014, Geldrich entered into a plea agreement and pled guilty to

single counts of aggravated murder, aggravated robbery, kidnapping, and tampering with evidence in exchange for his cooperation with the prosecution of his two co-defendants, Adam Patrick and Michael Watson. The charges stemmed from Geldrich's involvement with the robbery, kidnapping, and murder of the then 16-year-old Dione Payne.[1] After accepting Geldrich's guilty plea, the trial court sentenced Geldrich to serve a total period of 22 years to life in prison and ordered him to pay $64,216.39 in restitution to the victim's mother, Tamiko Payne ("Mother"), for the medical costs incurred by her son before he succumbed to his injuries. Geldrich objected and requested the trial court to hold an evidentiary hearing on the matter. The trial court refused to hold an evidentiary hearing. Geldrich then appealed.

{¶ 3} On appeal, the state conceded and this court agreed that the trial court erred by failing to hold an evidentiary hearing after Geldrich disputed the amount of restitution imposed. *State v. Geldrich*, 12th Dist. Warren No. CA2014-08-112, 2015-Ohio-1706, ¶ 7. The matter was then remanded to the trial court to hold an evidentiary hearing to "determine the appropriate amount of restitution that should be imposed on Geldrich, if any." *Id.* at ¶ 9.

{¶ 4} On October 14, 2015, the trial court held the required evidentiary hearing. At the hearing, the state called a single witnesses, Mother, who testified that she was seeking a restitution order for her son's medical bills now in collection, the value of the clothes and shoes he was wearing at the time of his murder, as well as money to help pay for a headstone, an amount the trial court determined totaled $2,383.98. Following this testimony, Geldrich raised a number of arguments as to why he believed he should not be ordered to pay any restitution, which included the fact that he "was going to be in prison for a long time and that he was indigent." Overruling Geldrich's various arguments, the trial court then issued a decision ordering Geldrich to pay $2,383.98 in restitution to Mother.

---

1. This court affirmed Watson's conviction for his role in the murder, aggravated robbery, and kidnapping in *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321.

{¶ 5}  Geldrich now appeals from the trial court's decision, raising a single assignment of error challenging the trial court's order of restitution.

## Standard of Review

{¶ 6}  As this court recently stated, instead of applying an abuse of discretion standard, "the proper standard of review for analyzing the imposition of restitution as a part of a felony sentence is whether the sentence complies with R.C. 2953.08(G)(2)(b)." *State v. Collins*, 12th Dist. Warren No. CA2014-11-135, 2015-Ohio-3710, ¶ 31.  Pursuant to R.C. 2953.08(G)(2)(b), this court may increase, reduce, or otherwise modify a sentence that is appealed, or vacate the sentence and remand the matter for resentencing, if we clearly and convincingly find the sentence is contrary to law.  The term "sentence" as utilized in R.C. 2953.08(G)(2)(b) encompasses an order of restitution.  *Collins*, at ¶ 31, fn. 1.  This is an "extremely deferential" standard of review for the restriction is on the appellate court, not the trial judge.  *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 43.

## Restitution and R.C. 2929.18(A)(1)

{¶ 7}  R.C. 2929.18(A)(1) grants a trial court the authority to order restitution by an offender to the victim, or any survivor of the victim, in an amount commensurate with the victim's economic loss.  *State v. Hubbard*, 12th Dist. Butler No. CA2014-03-063, 2015-Ohio-646, ¶ 65.  As defined by R.C. 2929.01(L), the term "economic loss" means "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense" and includes, among others, medical costs and funeral expenses incurred. "Economic loss," however, does not include "non-economic loss or any punitive or exemplary damages."  R.C. 2929.01(L).

{¶ 8}  Due process "requires that the amount of restitution ordered bear a reasonable relationship to the actual loss suffered by the victim."  *State v. Stamper*, 12th Dist. Butler No. CA2009-04-115, 2010-Ohio-1939, ¶ 17.  Thus, the restitution amount is limited to the "actual

loss or damage caused by the offender and must be established to a reasonable degree of certainty." *Collins*, 2015-Ohio-3710 at ¶ 32, citing *State v. Dyer*, 12th Dist. Butler No. CA2005-05-109, 2006-Ohio-3537, ¶ 30. In order to determine the proper amount of restitution, R.C. 2929.18(A)(1) permits the trial court to base its restitution order on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, "provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."

### Actual Economic Loss

{¶ 9} Initially, Geldrich argues the trial court erred by ordering him to pay restitution to Mother because she did not suffer any actual economic loss since she has not yet paid her son's medical bills now in collection, nor has she purchased a headstone to mark her son's grave. We find this argument unpersuasive as it essentially advocates for a rule of law that permits only those individuals who can afford to pay a victim's medical costs and funeral expenses upfront to be entitled to recover those costs and expenses through an order of restitution. This is inconsistent with the reasoning behind ordering an offender to pay restitution as part of his or her sentence. Moreover, the fact that an estate had not been opened for the victim is inconsequential since the collection notices regarding the victim's medical bills were directed specifically to Mother. Again, R.C. 2929.18(A)(1) specifically permits the trial court to issue an order of restitution against an offender to any survivor of the victim, in this case, Mother. Therefore, Geldrich's first argument is without merit.

### Competent and Credible Evidence

{¶ 10} Next, Geldrich argues the trial court's decision ordering him to pay restitution was improper since the order was not supported by competent and credible evidence. "A

victim's loss may be supported through documentary evidence or testimony, including that of the victim." *Collins*, 2015-Ohio-3710 at ¶ 33. In this case, the record contains both Mother's direct testimony and documentary evidence regarding her deceased son's medical bills and the cost of a headstone to mark his grave. The fact that the trial court reduced the restitution order for the purported cost of a headstone is immaterial for the trial court, as the trier of fact, was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. *State v. Creech*, 12th Dist. Butler No. CA2005-11-488, 2006-Ohio-3896, ¶ 7. Therefore, Geldrich's second argument is also without merit.

### Present and Future Ability to Pay

{¶ 11} Geldrich further argues the trial court erred by ordering him to pay restitution because the trial court failed to consider his present and future ability to pay. We disagree.

{¶ 12} Pursuant to R.C. 2929.19(B)(5), which was previously codified under R.C. 2929.19(B)(6), before imposing a financial sanction, including restitution, the trial court must "consider the offender's present and future ability to pay the amount of the sanction[.]" There are no express factors that must be considered or specific findings that must be made regarding the offender's ability to pay. *State v. Dandridge*, 12th Dist. Butler No. CA2003-12-330, 2005-Ohio-1077, ¶ 6. In addition, although preferable for appellate review, "'a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction.'" *State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 47, quoting *State v. Henderson*, 4th Dist. Vinton No. 07CA659, 2008-Ohio-2063, ¶ 7. However, there must be some evidence in the record to show that the trial court acted in accordance with the legislative mandate that it consider the offender's ability to pay. *State v. Lang*, 12th Dist. Brown No. CA2011-03-007, 2011-Ohio-5742, ¶ 12, citing *State v. Adkins*, 144 Ohio App.3d 633, 647 (12th Dist.2001). This court looks to the totality of the record to see if this requirement has been satisfied. *State v. Rabe*, 12th Dist. Clermont No. CA2013-

09-068, 2014-Ohio-2008, ¶ 74.

{¶ 13} In this case, Geldrich claims the only evidence in the record regarding his present and future ability to pay is the fact that he was found indigent. However, not only is this claim inaccurate, it is well-established that "a finding that appellant is indigent for the purpose of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction." *State v. Hinojosa*, 12th Dist. Butler No. CA2003-05-104, 2004-Ohio-1192, ¶ 31. Rather, as the record reveals, the trial court was able to personally view Geldrich multiple times at the hearing on his motion to suppress, his plea and sentencing hearings, the hearing regarding restitution, as well his testimony at his co-defendant Michael Watson's jury trial. As a result, the trial court had ample opportunity based upon its collective perceptions and impressions formed throughout the various proceedings to consider Geldrich's present and future ability to pay prior to issuing its decision. This is particularly true here considering Geldrich explicitly argued that, similar to his co-defendant Michael Watson, he should not be ordered to pay restitution since he "was going to be in prison for a long time and that he was indigent." This argument, which the trial court clearly rejected, necessarily requires the trial court to take into consideration Geldrich's present and future ability to pay.

{¶ 14} As this court has stated previously, because the standard of review contained in R.C. 2953.08(G)(2) is "extremely deferential," in order to warrant a reversal, this court "must clearly and convincingly find from the record that the trial court actually did not consider appellant's ability to pay." *Collins*, 2015-Ohio-3710 at ¶ 47. Here, although sparse, there was evidence in the record to indicate the trial court properly considered Geldrich's present and future ability to pay prior to issuing its order of restitution. In so holding, we reiterate that although preferable for appellate review, "'a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction.'" *Dehner*, 2013-Ohio-

3576 at ¶ 47, quoting *Henderson*, 2008-Ohio-2063 at ¶ 7. Therefore, Geldrich's third argument is likewise without merit.

**Disproportionate Sentences**

{¶ 15} Finally, Geldrich argues the trial court erred by ordering him to pay restitution when his co-defendant Michael Watson was not. According to Geldrich, this constituted a disproportionate sentence that violated his constitutional rights and R.C. 2929.11(B). We again disagree.

{¶ 16} Pursuant to R.C. 2929.11(B), felony sentences shall be "consistent with sentences imposed for similar crimes committed by similar offenders." However, consistency in sentencing does not mean uniformity. *State v. Graham*, 12th Dist. Warren No. CA2013-07-066, 2014-Ohio-1891, ¶ 14. There is also "no requirement that co-defendants receive equal sentences." *State v. Isreal*, 12th Dist. Butler No. CA2010-07-170, 2011-Ohio-1474, ¶ 70, citing *State v. Hall*, 10th Dist. Franklin No. 09AP-302, 2009-Ohio-5712, ¶ 9. Rather, consistent sentences are derived from the trial court's "proper application of the statutory sentencing guidelines." *State v. Micomonaco*, 12th Dist. Butler No. CA2011-07-139, 2012-Ohio-5239, ¶ 49. Therefore, in order for an offender to successfully claim inconsistent sentencing, the offender "must demonstrate that the trial court failed to properly consider the statutory sentencing factors and guidelines found in R.C. 2929.11 and 2929.12." *Lang*, 2011-Ohio-5742 at ¶ 25.

{¶ 17} After a thorough review of the record, we find nothing improper about the trial court's decision to order Geldrich to pay restitution when his co-defendant was not. As the record indicates, although requesting an order of restitution, the state did not provide any evidence regarding an amount of restitution for the victim's medical costs, clothes, or funeral expenses at Watson's sentencing hearing, whereas in this case the state clearly did. Therefore, because the record indicates the trial court properly considered the statutory

sentencing factors and guidelines found in R.C. 2929.11 and 2929.12, Geldrich's final argument is similarly without merit.  Accordingly, having found no merit to any of Geldrich's arguments raised herein, Geldrich's single assignment of error is overruled.

{¶ 18} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.